1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9

10   MICHAEL BOND and MARK MORRIS, on    )
     behalf of themselves and others similarly )
11   situated                            )   CASE NO.
                                         )
12              Plaintiffs,              )   **COMPLAINT - CLASS ACTION**
                                         )   **FRAUD, BREACH OF WARRANTY,**
13          v.                           )   **MISREPRESENTATION AND UNJUST**
                                         )   **ENRICHMENT**
14   COSTCO WHOLESALE CORPORATION, a     )
15   Washington corporation; HAWAIIAN ISLES )
     KONA COFFEE, LTD., LLC, a Hawaiian  )   **JURY DEMANDED**
16   limited liability company; COST     )
17   PLUS/WORLD MARKET, a subsidiary of BED)
     BATH & BEYOND, a New York corporation; )
18   BCC ASSETS, LLC d/b/a BOYER'S COFFEE )
     COMPANY, INC., a Colorado corporation; )
19   JAVA LLC, a Michigan limited liability )
20   company;  MULVADI CORPORATION, a    )
     Hawaii corporation; COPPER MOON     )
21   COFFEE, LLC, an Indiana limited liability )
     company; GOLD COFFEE ROASTERS, INC., )
22   a Florida corporation; CAMERON'S COFFEE )
23   AND DISTRIBUTION COMPANY, a         )
     Minnesota corporation; PACIFIC COFFEE, )
24   INC., a Hawaii corporation; THE KROGER )
     CO., an Ohio corporation; WALMART INC., a )
25   Delaware corporation; BED BATH &    )
26   BEYOND INC., a New York corporation; )
     ALBERTSONS COMPANIES INC., a        )
27

**COMPLAINT - 1**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  Delaware Corporation; SAFEWAY INC., a          )
2  Delaware Corporation;  MNS LTD., a Hawaii       )
   Corporation; MARMAXX OPERATING            )
3  CORP. d/b/a T.J. MAXX AND MARSHALLS,  )
   a Delaware corporation; SPROUTS FARMERS )
4  MARKET, INC. a Delaware corporation; JOHN)
   DOE CO. 1-20.                                   )
5                                                  )
6                 Defendants.                      )
   _____)
7

8          Plaintiffs, through their counsel of record, on their own behalf and on behalf of all others

9  similarly situated, aver, allege and state as follows their complaint against the Defendants, based on

10  information and belief and the investigation of their counsel.

11                              **INTRODUCTION**

12          1.      Plaintiffs bring this class action on behalf of a proposed national class of consumers

13  (the "Class") who purchased any coffee product that was made by and/or sold by any of the named

14  Defendants, where such coffee product was deceptively and falsely labeled as "Kona" coffee.  Kona

15  coffee, renowned for its distinctive flavor and aroma, is one of the most famous and revered specialty

16  coffees in the world.  But only coffee grown on farms located within the Kona District of the Big

17  Island of Hawaii ("Kona District" defined in paragraph 36 below) can be truthfully marketed, labeled,

18  and sold as Kona coffee.  The volcanic soil, the elevation, and the humidity of this region combine to

19  give Kona coffee its distinctive characteristics.  The term "Kona" tells consumers their coffee comes

20  from this distinctive geographic region.

21          2.      Plaintiffs bring this class action against coffee distributors, wholesalers, and retailers

22  who for years have wrongfully profited by selling to consumers coffee products falsely labeled and

23  advertised as originating from Kona.  These coffee distributors, wholesalers, and retailers have taken

**COMPLAINT - 2**
#1231382 v1 / 72448-002

advantage of the goodwill and reputation associated with the geographic region of Kona by passing off ordinary commodity coffee as "Kona" coffee. Consumers are paying for premium Kona coffee, and believe that they are getting premium Kona coffee in the package, when the reality is that the package is filled with ordinary commodity coffee with an inflated price.

3.      Through their deceptive actions, Defendants have confused consumers as to the legitimate sources of authentic Kona coffee, and have unjustly profited from that confusion. For the named Defendants who manufacture the accused coffee products (i.e. the Defendants who are responsible for the package design and contents of the coffee products), their deceptive labeling and marketing practices constitute fraud. For the retail Defendants who sell the accused coffee products fraudulently labeled as "Kona" coffee, they have been unjustly enriched by the fraud perpetrated on the Plaintiffs and the Class.

4.      Plaintiffs bring this action to obtain redress for all consumers injured by the conduct of the Defendants. Plaintiffs seek to recover for the Class all damages available for claims of common law fraud, intentional misrepresentation, negligent misrepresentation and breach of express and implied warranties. Through their claim of unjust enrichment, Plaintiffs also seek restitution through the disgorgement of Defendants' profits wrongfully earned from products deceptively labeled as "Kona" coffee and sold to Plaintiffs and members of the Class.

## PARTIES

5.      Plaintiff Michael Bond is a citizen of the United States and resident of the state of Washington. For over 15 years, Plaintiff Bond has purchased coffee falsely and deceptively labeled "Kona." Plaintiff Bond has purchased such coffee products manufactured and/or sold by each of the Defendants named in this Complaint. Given the prominent placement of the term "Kona" on the label

COMPLAINT - 3
#1231382 v1 / 72448-002

of the coffee products, coupled with the package designs, Plaintiff Bond reasonably expected the products he purchased to contain only authentic Kona coffee. But for the misrepresentations on the packaging, Plaintiff Bond would not have purchased the "Kona" coffee manufactured and/or sold by Defendants, and certainly would not have paid the premium price associated with the coffee products falsely labeled and described as Kona coffee. Plaintiff Bond has been injured by each Defendant's conduct in an amount to be proven at trial.

6.      Plaintiff Mark Morris is a citizen of the United States and resident of the state of Washington. For at least 10 years, Plaintiff Morris has purchased coffee falsely and deceptively labeled "Kona." Plaintiff Morris has purchased such coffee products manufactured and/or sold by each of the Defendants named in this Complaint except Safeway and Albertsons. Given the prominent placement of the term "Kona" on the label of the coffee products, coupled with the package designs, Plaintiff Morris reasonably expected the products he purchased to contain only authentic Kona coffee. But for the misrepresentations on the packaging, Plaintiff Morris would not have purchased the "Kona" coffee manufactured and/or sold by Defendants, and certainly would not have paid the premium price associated with the coffee products falsely labeled and described as Kona coffee. Plaintiff Morris has been injured by each Defendant's conduct, except for Safeway and Albertsons, in an amount to be proven at trial.

7.      On information and belief, defendant HAWAIIAN ISLES KONA COFFEE LTD., LLC ("Hawaiian Isles"), is a Hawaii limited liability company with its principal place of business in Honolulu, Hawaii. Hawaiian Isles sells a variety of coffee products throughout the United States, including this Judicial District, through various retail outlets, including but not limited to Cost Plus World Market, Kroger, Safeway, Albertsons, ABC Stores, Amazon, and Walmart. Hawaiian Isles

**COMPLAINT - 4**
#1231382 v1 / 72448-002

misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. Hawaiian Isles designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents. Hawaiian Isles advertises its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook.

8.    On information and belief, defendant COST PLUS/WORLD MARKET ("World Market") is a retail chain with 276 stores across the United States including 11 stores located in this Judicial District. World Market, with its headquarters in Alameda, California, is a wholly owned subsidiary of BED, BATH & BEYOND INC., a New York corporation. Through its retail locations and its own online store, www.worldmarket.com, World Market sells in this Judicial District and throughout the United States both its own private-label Kona coffee products as well as Kona coffee products offered by third parties. World Market misrepresents the geographic origin, quality and contents of its own "Kona" coffee products with the prominent placement of KONA on the front of the packaging. World Market designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents. Certain third-party coffee products that World Market sells, such as those from Hawaiian Isles, similarly features labels designed to deceive consumers by featuring labels that misrepresent the geographic origin and contents of the product.

9.    On information and belief, BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC. ("Boyer's") is a Colorado corporation with its principal place of business in Denver, Colorado. Boyer's is a wholly owned subsidiary of Luna Gourmet Coffee and Tea Company, LLC, which is a Colorado limited liability company also based in Denver, Colorado. Boyer's sells its coffee products in this Judicial District and throughout the United States through its online store at

COMPLAINT - 5
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

www.boyerscoffee.com as well as through national retailers including but not limited to Amazon, Walmart, and Safeway.  Boyer's misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. Boyer's designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

10.     On information and belief, defendant JAVA LLC ("Java") is a Michigan limited liability company with its principal place of business at Nunica, Michigan.  Java primarily does business under the name Magnum Coffee Roastery, under which it sells a variety of coffee products under its Magnum Exotics label.  Java sells its coffee products throughout the United States, including this Judicial District, through both its own online store, www.javaboulevard.com, and various retail outlets, including but not limited to Costco, Amazon, Walmart, T.J. Maxx and Marshalls.  Java misrepresents the origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Java designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

11.     On information and belief, defendant MULVADI CORPORATION ("Mulvadi") is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.  Mulvadi sells a variety of coffee products throughout the United States, including this Judicial District, through various retail outlets, including but not limited to ABC Stores, Amazon, and Walmart.  Mulvadi misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Mulvadi designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

**COMPLAINT - 6**
#1231382 v1 / 72448-002

12.     On information and belief, defendant COPPER MOON COFFEE, LLC ("Copper Moon") is an Indiana limited liability company with its principal place of business in East Lafayette, Indiana.  Copper Moon sells a variety of coffee products in this Judicial District and throughout the United States, including this Judicial District, both through its webpage, www.coppermooncoffee.com, and through various retail outlets, including but not limited to Copper Moon Coffee Cafes, Amazon, Walmart, Sam's Club, Bed Bath & Beyond (the parent company of World Market), Office Depot, and Staples.  Copper Moon misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Copper Moon designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

13.     On information and belief, defendant GOLD COFFEE ROASTERS, INC., dba Hawaiian Gold and also Parry Estates ("Hawaiian Gold"), is a Florida corporation with its principal place of business in Jupiter, Florida.  Hawaiian Gold sells a variety of coffee products throughout the United States, including this Judicial District, through its own website and various retail outlets, including but not limited to Kroger, Amazon, Walmart, T.J. Maxx and Marshalls.  Hawaiian Gold misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Hawaiian Gold designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

14.     On information and belief, CAMERON'S COFFEE AND DISTRIBUTION COMPANY ("Cameron's") is a Minnesota corporation with its principal place of business in Shakopee, Minnesota.  Cameron's sells its coffee products in this Judicial District and throughout the

United States through its online store at www.cameronscoffee.com as well as through national retailers including but not limited to Amazon, Walmart, Target, Sprouts, and Safeway.    Cameron's misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Cameron's designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

15.    On information and belief, defendant PACIFIC COFFEE, INC., which does business as Maui Coffee Company ("MCC"), is a Hawaii corporation with its principal place of business in Lahaina, Hawaii.  MCC sells a variety of coffee products throughout the United States, including this Judicial District, both through its webpage, www.mauicoffeeco.com, and through various retail outlets, including but not limited to ABC Stores, Amazon, Walmart, and Target.  MCC misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  MCC designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.

16.    On information and belief, defendant THE KROGER CO. ("Kroger") is an Ohio Corporation, with its principal place of business in Cincinnati, Ohio.  Kroger is a retail chain with over 2,700 stores across the United States, including approximately 119 stores located in this Judicial District.  Kroger also does business as Fred Meyer and QFC.  With its private label "Kivu," Kroger misrepresents the geographic origin, quality and contents of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging and its self-serve coffee bean dispensers. Kroger designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents.  In addition, Kroger sells coffee products from Hawaiian Gold,

COMPLAINT - 8
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

and others, that are designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and contents of the product.

17.    On information and belief, defendant WALMART INC. ("Walmart") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Bentonville, Arkansas.  Walmart has a total of 5,358 stores nationwide, and approximately 67 stores in Washington. Walmart sells in this Judicial District and throughout the United States a variety of deceptive coffee products, including but not limited to the following: MCC, Mulvadi, Copper Moon, Cameron's, Hawaiian Gold, Boyer's, and Hawaiian Isles.  Each of these brands sell products designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and contents of the product.

18.    On information and belief, defendant COSTCO WHOLESALE CORPORATION ("Costco") is a corporation organized and existing under the laws of the State of Washington with its principal place of business in Issaquah, Washington.  Costco is the second largest retailer in the world, and it owns and operates numerous retail locations within this Judicial District.  Through its retail and online stores, Costco sells in this Judicial District and throughout the United States deceptive coffee products such as Magnum Exotics, which are designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and contents of the product.

19.    On information and belief, defendant BED BATH & BEYOND INC. ("Bed Bath"), is a New York corporation with its headquarters in Union, New Jersey.  Bed Bath operates over 1000 retail locations across the country, including numerous retail locations within this Judicial District. Bed Bath is the parent company of defendant World Market.  Through its retail locations and its own online store, Bed Bath sells in this Judicial District and throughout the United States various coffee

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

products labeled "Kona" from brands including, but not limited to, Copper Moon.  The Copper Moon coffee products sold by Bed Bath are designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and contents of the product.

20.    On information and belief, defendant ALBERTSONS COMPANIES INC. ("Albertsons") is a Delaware corporation with its principal place of business in Boise, Idaho. Albertsons is a national grocery store chain with over 2,300 locations across the United States, including approximately 20 stores in this Judicial District.  Albertsons is the parent company of Safeway, Inc.  Through its grocery stores in this Judicial District and throughout the United States, Albertsons sells a variety of deceptive coffee products, including but not limited to Hawaiian Isles, which are designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and contents of the product.

21.    On information and belief, defendant SAFEWAY INC. ("Safeway") is a Delaware corporation with its principal place of business in Pleasanton, CA.  Safeway is a national grocery store chain with over 900 locations across the United States, including dozens of stores in this Judicial District.  Safeway is a subsidiary of Albertsons.  Through its grocery stores in this Judicial District and throughout the United States, Safeway sells a variety of deceptive coffee products, including but not limited to Hawaiian Isles, which are designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and contents of the product.

22.    On information and belief, defendant MNS LTD. is a Hawaii corporation with its principal place of business located at Honolulu, Hawaii.  Under the tradename ABC Stores, MNS Ltd. (hereinafter "ABC") owns and operates a chain of retail stores through which it sells a variety of coffee products labeled as "Kona."   ABC also sells in this Judicial District and throughout the United States

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    coffee products labeled as "Kona" through its online store at www.abcstores.com.  Some of the coffee

2    products sold by ABC are designed to deceive consumers by featuring labels that misrepresent the

3    geographic origin, quality and contents of the product.  Those offending brands include but are not

4    limited to Mulvadi, MCC, and Hawaiian Isles.

5

6        23.    On information and belief, defendant MARMAXX OPERATING CORP.

7    ("Marmaxx") is a Delaware corporation with its principal place of business in Framingham,

8    Massachusetts.  Marmaxx is a subsidiary of TJX Companies, Inc. and does business as T.J. Maxx and

9    Marshalls.  Marmaxx operates a chain of over 1,200 T.J. Maxx retail stores and over 1,000 Marshalls

10   retail stores in the United States, with numerous locations in this Judicial District, through which it

11   sells a variety of coffee products labeled as "Kona."    Marmaxx's parent, TJX Companies, touts

12   Marmaxx as one of the largest off-price retailers in the country.  Some of the coffee products sold by

13   Marmaxx are designed to deceive consumers by featuring labels that misrepresent the geographic

14   origin, quality and contents of the product.  Those offending brands include, but are not limited to,

15   Hawaiian Gold, Magnum Exotics, and Kona Roasting Co.

16

17

18       24.    On information and belief, defendant SPROUTS FARMERS MARKET, INC.

19   ("Sprouts") is a Delaware corporation with its principal place of business in Phoenix, Arizona.  Sprouts

20   operates over 200 grocery stores across the United States, including multiple locations within this

21   Judicial District.  Some of the coffee products sold by Sprouts are designed to deceive consumers by

22   featuring labels that misrepresent the geographic origin, quality and contents of the product.  Those

23   offending brands include, but are not limited to, Cameron's.

24

25       25.    Defendants John Doe Co. are entities that manufacture and/or sell coffee products

26   designed to deceive consumers by featuring labels that misrepresent the geographic origin, quality and

27

**COMPLAINT - 11**
#1231382 v1 / 72448-002

contents of the product.  As of the time of commencing this class action lawsuit, Plaintiffs continue to test coffee products labeled "Kona" to determine whether such label is accurate.  The entities that produce and/or sell such products with the false and deceptive labels are named in this lawsuit as John Doe Co. defendants.  Once the true identities of the John Doe Co. defendants are identified through the scientific testing, the Complaint will be amended to specifically name the John Doe Co. defendants and their offending products.

### JURISDICTION AND VENUE

26.    The Court has diversity jurisdiction under the Class Action Fairness Act 28 U.S.C. §1332(d) ("CAFA"), because the Class members are coffee consumers in multiple states, the Defendants are multiple companies also distributed among the states, the aggregate amount in controversy is over $5,000,000, and the proposed class consists of over 100 members.

27.    The Defendants conduct business in this Judicial District and have been unjustly enriched through their deceptive acts in this Judicial District.  Each of the retail Defendants either operate multiple brick-and-mortar retail stores in this Judicial District and/or sell the accused "Kona" coffee products online direct to consumers in this Judicial District.  In addition, consumers from outside of this Judicial District purchase the accused "Kona" coffee products from the retail Defendants and other online retailers such as Amazon.com, which then ship said products to residents of this Judicial District.  Each of the Defendants who manufacture the accused "Kona" coffee products, sell such products through numerous retail locations throughout this Judicial District.  In addition, such Defendants also sell their accused "Kona" coffee products online direct to consumers in this Judicial District, and then ship their accused "Kona" coffee products to this Judicial District.

**COMPLAINT - 12**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

28.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

### CLASS ACTION ALLEGATIONS

29.     **Class Action.**  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs file this class action suit on their own behalf and as representatives of a class of consumers (the "Class").

30.     **Class Defined**.  The Class is defined to include all consumers who, during the applicable statute of limitations period preceding the commencement of this action ("Class Period"), purchased coffee falsely labeled as "Kona" coffee, which was manufactured and/or sold by any of the Defendants named in this action.  The Class excludes any consumer who otherwise satisfies the class definition except that their purchase of coffee falsely labeled as "Kona" occurred solely within the State of Hawaii.  This Class further excludes any party named as a defendant in this action, even if that party otherwise meets the definition of class membership.

31.     **Numerosity**.  On information and belief, the Class has over a million members.  The members of the Class are so numerous that joinder of all Class members in this action is not practical.

32.     **Typicality**.  Plaintiffs' claims are typical of the claims of the Class since all Class members were damaged in the same way and by the same wrongful actions by Defendants as alleged in detail below.  Defendants have no defenses unique to any individual Class member.

33.     **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the interests of the Class.  The interests of the Plaintiffs are fully aligned with, and not adverse to, the interests of the Class.  Plaintiffs are represented by counsel that is experienced and competent in litigating complex commercial litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

on behalf of all Class members and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to the Class.

34.    **Commonality**.  Questions of both law and fact common to members of the Class predominate over questions that may be unique to individual members.  Such common questions of law and fact include, but are not limited to:

a.  the chemical composition of a Kona coffee bean as established through elemental abundance analysis and isotopic analysis;

b.  the scientific testing that proves that the Defendants' coffee products contain no meaningful amount of authentic Kona coffee;

c.  whether Defendants made false or misleading representations as to the geographic origin of coffee labeled and sold as "Kona" coffee;

d.  whether the Defendants who manufacture the accused "Kona" coffee products actively concealed the true contents of the product from Plaintiffs and members of the Class;

e.  whether the accused products labeled KONA actually contain coffee from the Kona District;

f.  whether the Defendants' marketing, distribution, and/or sale of products falsely or misleadingly labeled as "Kona" coffee has created or is likely to create confusion among consumers;

g.  whether the labeling, packaging and marketing of the accused products as "Kona" coffee deceived consumers into paying a higher price than they otherwise would;

COMPLAINT - 14
#1231382 v1 / 72448-002

h.  whether the Defendants have committed a breach of express or implied warranty by selling products falsely labeled as "Kona" coffee;

i.  whether the Defendants who manufacture the accused coffee products have committed fraud through their act of prominently featuring KONA on the label of their products in order to deceive consumers into purchasing what they believe to be authentic Kona coffee when the Defendant knows its product is just commodity coffee;

j.  whether the packaging and labeling of the accused products contains misrepresentations of fact intended to deceive or likely to deceive consumers;

k.  the nature and extent of the damages to Plaintiffs and the Class members;

l.  the nature and extent of Defendants' profits earned as a result of selling products with labels that falsely or misleadingly identify the region of "Kona" as the place of origin of the coffee in the accused product;

m. whether the Defendants' profits earned from the accused products should be disgorged;

n.  whether Plaintiffs and members of the Class are entitled to restitution as a remedy; and

o.  whether Plaintiffs and members of the Class are entitled to prejudgment interest.

35.    **Appropriateness**. This class action is appropriate for certification because Defendants' wrongful acts have harmed the Class members. Additionally, the damages suffered by individual Class members are small relative to the burden and expense of individual prosecution of the complex

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

litigation required to obtain relief from the Defendants.  Given the economic disparity between the individual Class members and the deep-pocketed Defendants, some of which are among the largest and most profitable corporations in the world, it would be virtually impossible for the Class members to obtain effective relief as individual litigants.  Further, given that the claims here involve small consumer products, the prosecution of individual claims would be inefficient and infeasible.  A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  For these reasons, among others, class treatment is superior to any alternatives, such as joinder, for the fair and efficient adjudication of the dispute.

## **FACTUAL BACKGROUND**

36.    Kona coffee is one of the rarest and most prized coffees in the world.  Kona coffee is grown in the Kona District on the Big Island of Hawaii (the "Kona District").  *See* map below.  *See also* Hawaii Administrative Rules ("HAR") §4-143-3 (defining the geographic region of Kona as the "North Kona and South Kona districts on the island of Hawaii, as designated by the State of Hawaii Tax Map").  The Kona District contains only 3,800 acres of land cultivated for Kona coffee production, which sharply limits the amount of Kona coffee that can be grown.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



37.     Only coffee grown in the Kona District can be sold as Kona coffee.  *See, e.g.,* HAR §4-143-3 ("'Kona coffee' means natural coffee … which is grown in the geographic region of Kona and which at least meets the minimum requirements of Kona prime green coffee.").  Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee.  *See, e.g.,* HAR §4-143-1 ("The use of any geographic origin defined in section 4-143-3 [on coffee] that is not grown in the geographic region defined in section 4-143-3 is prohibited.").

38.     Kona coffee has been grown in the Kona District since 1828.  The Kona District's volcanic soil, elevation, rainfall, proximity to the Pacific Ocean, moderate temperatures, and sunshine all interact to create Kona coffee's distinctive characteristics.  Kona coffee's unique flavor, aroma, and mouth feel are a direct result of this growing environment.

39.     The Kona name tells consumers that they are buying coffee grown in the Kona District. The name also tells consumers that the coffee has a distinctive flavor profile, and that the beans are of

the highest quality. Consequently, compared to prices paid for coffees from most other regions of the world or commodity coffees, consumers have been willing to pay a premium for authentic Kona coffee.

40.     The world's annual supply of Kona coffee is approximately 2.7 <u>million</u> pounds of green Kona coffee. That compares to 20 <u>billion</u> pounds of green coffee produced worldwide. In other words, authentic Kona represents approximately 0.01% of worldwide coffee production. It is truly a premium product.

41.     But even though only **2.7** million pounds of authentic green Kona coffee is grown annually, over **20** million pounds of coffee labeled as "Kona" is sold at retail. That is physically impossible; someone is lying about the contents of their "Kona" products.

42.     Defendants sell packaged coffee products that are presented to consumers as Kona coffee, but that actually contain cheap commodity coffee beans. Some packages contain trace amount of Kona coffee, while other packages contain no Kona coffee at all.

43.     The Defendants unambiguously represent in their marketing and packaging that the products they are selling to consumers contain Kona coffee. The labels and packaging contain other misrepresentations intended to mislead consumers as to the contents and quality of the Defendants' coffee products. This deception is done to mislead and confuse consumers into purchasing Defendants' coffee or pay a higher price than they otherwise would for the type of coffee actually contained in the coffee products manufactured and/or sold by Defendants.

44.     Coffee industry professionals have long believed that not all of the coffee labeled "Kona" is derived from the Kona region of Hawaii. The problem has always been determining what was actually in a particular bag. Modern chemistry can now provide answers to that question.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

## ELEMENTAL TESTING OF COFFEE

45.     Kona coffee is grown in a very specific geographic area on the Big Island of Hawaii. That geographic area has a distinctive soil composition, due largely to its proximity to volcanoes. And that geographic area has distinctive humidity and rainfall, due largely to its proximity to the Pacific Ocean.

46.     As a result of the local soil and rainfall, certain elements are present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains Kona coffee beans, these elements tend to be present in high concentrations. If these elements are not present in high concentrations, then the package is unlikely to contain Kona coffee.

47.     Moreover, as a direct result of the local soil and rainfall, certain elements are **not** present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains only Kona coffee beans, then these elements tend **not** to be present in high concentrations. If they are present in high concentrations, then the package is unlikely to contain Kona coffee.

48.     Scientists can examine the concentration of each of the elements that are found in Kona coffee beans, as well as the concentration of each of the elements that are **not** found in Kona coffee beans. By combining this information, scientists can determine with high confidence whether a particular package is authentic Kona coffee.

49.     In practice, instead of looking at the concentration of an isolated element like barium (Ba) or nickel (Ni), scientists examine the *ratio* of the concentrations of *pairs* of elements. The reason for this approach is simple. If you were to roast coffee beans for ten minutes longer, you would not impact the amount of barium or nickel in the sample, but you would burn away more of the overall coffee bean. The concentration of barium would therefore increase, since it is defined as the mass of

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

barium divided by the mass of the total bean.  And the <u>concentration</u> of nickel would therefore increase, since it is defined as the mass of nickel divided by the mass of the total bean.  But the <u>ratio</u> of the concentration of barium to the concentration of nickel would be unchanged.  And since the lab does not know how long particular coffee samples were roasted by the Defendants, the scientists focus on measures that do not change with roasting.

50.    Having tested barium and nickel, scientists have determined that authentic Kona coffee has a ***ratio*** of the concentration of barium to the concentration of nickel, also called the ***relative concentration***, that falls within a certain range.  If an unknown sample has a relative concentration within that range, it may or may not be Kona.  But if an unknown sample has a relative concentration clearly <u>outside</u> that range, it is highly unlikely to be Kona.  (This analysis makes intuitive sense.  A veterinarian knows that dogs weigh between 1 and 325 pounds.  If that veterinarian sees an animal that weighs 100 pounds, which is clearly in the range of observed dog weights, the veterinarian would say that the animal may or may not be a dog.  But if that veterinarian sees an animal that weighs 500 pounds, which is well outside the range of previously-observed dog weights, the veterinarian would immediately note that the animal is highly unlikely to be a dog.)

51.    Determining the concentrations of particular elements and ***isotopes*** (which are simply variations of a particular element) is a process that requires significant scientific expertise and expensive instrumentation.  The scientific techniques of ***elemental analysis*** and ***isotopic analysis***[1] are widely accepted in the scientific community, and have been used in studies of various food products (including coffee).  Unfortunately, these tests are very expensive.  The cost is far too prohibitive for

---

[1] Two different types of isotopic testing have been performed to confirm whether a defendant has falsely designated Kona as the origin of its coffee products.  The first test examined strontium isotopes, and the second test examined hydrogen and oxygen isotopes.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

any individual consumer to order these tests be done to determine the actual contents of the coffee manufactured or sold by Defendants to determine the contents irrespective of the representations on the label or package.

52.    It is important to recognize that Defendants (who are likely to protest any and all aspects of scientific testing) could prove their innocence without retaining a single scientist, and without conducting a single lab test.  They could simply provide evidence of where they bought legitimate Kona coffee that they have been selling at retail.

53.    It is also important to recognize that Defendants are sophisticated participants in the premium coffee marketplace.  On information and belief, certain named defendants employ professional coffee buyers whose job function is to source coffees for their products or their retail shelves.  In other words, much like a professional jeweler could never plausibly claim to be confused about the difference between a Rolex and a Timex, these sophisticated Defendants cannot plausibly claim to be confused about the coffee they are procuring.  The Defendants and their buyers know exactly what they are buying, and what they are selling.  And the Defendants who manufacture the coffee products certainly know whether the product labeled "Kona" coffee is truly Kona.

## THE DEFENDANTS' PRODUCTS AND WRONGFUL ACTS

54.    The Defendants who manufacture the accused coffee products use misrepresentations in their marketing and on the product packaging, particularly with the prominent placement of KONA on the label, to deceive consumers and induce them into buying packages of coffee falsely and/or misleadingly labeled as "Kona."  The Defendants who sell products falsely labeled as "Kona" coffee, when the product is little more than commodity coffee, are liable to consumers for breaching express and implied warranties.

COMPLAINT - 21
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

55.     For each Defendant who makes a "Kona" coffee product, this Complaint includes one or more examples of particular products in their product line.  The examples provided in this Complaint are intended to be representative, and not necessarily exhaustive, of the deceptive products manufactured and/or sold by each Defendant.  Sampling has shown that nearly every product in their product lines misrepresents the origin of the coffee beans contained in the package.  Given the scarcity of authentic Kona coffee (remember that Kona coffee represents only 0.01% of the worldwide supply of coffee) and the high profitability of marketing commodity coffee as if it were Kona coffee, it is no surprise that any Defendant that is willing to engage in such deceptive practices would consistently practice their deception across all product lines.  An unscrupulous merchant selling counterfeit Rolex watches on a street corner tends not to mix a real Rolex into inventory every once in a while.

56.     For each example product, this complaint includes two graphs that shed light on the true contents of the package.  The graphs are based on the ratios of elemental concentrations discussed above.  The graphs included in this complaint are only a subset of the data collected on each deceptive product. For each product, additional data reinforces the results shown below.

57.     For any particular coffee sample, a scientist can calculate the ratio between the concentration of strontium (Sr), and the concentration of zinc (Zn).  For authentic Kona coffee, that ratio falls within a narrow range.  A scientist can similarly calculate the ratio between the concentration of barium (Ba), and the concentration of nickel (Ni).  For authentic Kona coffee, that ratio also falls within a narrow range.  Those two ratios can be plotted on a scatter plot, creating a visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee.  The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee.  The red diamonds show the observed ratios from the coffee products sold by Defendants.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendants' designation of the origin of its coffee products as Kona is false. In other words, these tests demonstrate that the accused products do not contain the premium Kona coffee that the consumer expects based on the packaging.

58. For any coffee sample, a scientist can also calculate the ratio between the concentration of cobalt (Co), and the concentration of zinc (Zn). For authentic Kona, that ratio falls within a narrow range. And a scientist can calculate the ratio between the concentration of manganese (Mn), and the concentration of nickel (Ni). For authentic Kona, that ratio also falls within a narrow range. As with the earlier ratios, those two ratios can be plotted on a scatter plot, creating another visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee. The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee. The red diamonds show the observed ratios from the coffee products sold by Defendants. Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendants' designation of Kona as the origin of its coffee products is false. In other words, these tests demonstrate that the accused products do not contain the premium Kona coffee that the consumer expects based on the packaging.

59. *PACIFIC COFFEE ("MAUI COFFEE COMPANY" OR "MCC").* The Maui Coffee Company packages are unequivocal. The packages prominently say either "100% Kona Coffee" or "100% Kona Macadamia Nut" in large block print on the front panel. Seeing that packaging on a shelf or online, a consumer would conclude that the package contains no coffee beans other than Kona coffee beans.

**COMPLAINT - 23**
#1231382 v1 / 72448-002

60. MCC falsely labels its "Kona" coffee products with the prominent placement of 100% KONA on the front of the packaging.  MCC furthers this deception through its product descriptions published on its online store.  MCC deceptively describes its "100% Kona Coffee" product as follows:

> Without a doubt, one of the world's most sought-after beans by coffee connoisseurs! Taste the full rich flavor of 100% Kona Coffee and experience the magic of the Kona Coast for yourself. Our 100% Pure Kona Coffee has a medium to full body with mild acidity and will be delivered fresh to your doorstep. Take a trip to the Kona Coast when you experience the full rich flavor of our 100% Pure Kona Coffee.

MCC describes its "100% Kona Macadamia Nut" product as "Kona goodness with a touch of island-grown macadamia nuts. It doesn't get any more Hawaiian than that."  MCC also deceptively advertises its coffee products as "100% Kona" on its Internet advertising.  The deceptive product descriptions are designed to mislead consumers into believing that MCC's products contain coffee from Hawaii, and more specifically the Kona region of Hawaii.  The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that MCC coffee products contain nothing but premium Kona coffee beans in order to justify the high price MCC charges for what are actually less expensive commodity coffee beans.  Below are representative images of MCC's deceptive "Kona" coffee products.

**COMPLAINT - 24**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11




12      **Figure MCC-1**                    **Figure  MCC-2**

13          61. But while consumers would reasonably believe that the packages in Figures MCC-1

14   and MCC-2 are pure Kona coffee, the lab tests tell a different story.  On the below scatter plot showing

15   the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red

16

17   diamonds) are well outside the range of authentic Kona.  In other words, MCC's labels identifying

18   Kona as the origin of the coffee are false.

19
20
21
22
23
24
25
26
27

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure MCC-A.**

62. The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion for the MCC products that were tested. These accused MCC products (marked by red diamonds) are well outside the range of authentic Kona. In other words, MCC's labels identifying Kona as the origin of the coffee are false.

**COMPLAINT - 26**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100





**Figure MCC-B**

63. *MULVADI CORPORATION*. The front of the Mulvadi package says "100% Kona Coffee" in two distinct places. The main product banner is "Pure 100% Kona Coffee." And there is a misleading "Official Seal" that says "100% Kona Coffee." The purpose of the language that Mulvadi features on the face of its packaging is to mislead consumers into believing that Mulvadi coffee products come from the Kona District and contain nothing but Kona coffee beans.

64. Mulvadi deceptively places a gold sticker on its packaging, which it presents as the "Official Seal" of the "Independent Kona Coffee Growers Association," proclaiming that the product is "100% Kona Coffee" from the "Big Island of Hawaii." On information and belief, there is no such association that is recognized for certifying Kona coffee products as 100% authentic. Instead, the "seal" is a marketing ploy intended to deceive consumers as to the source of origin of the coffee sold by Mulvadi. The deceptive marketing, product names, and package designs are all intended to trade

COMPLAINT - 27
#1231382 v1 / 72448-002

off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Mulvadi coffee products contain premium Kona coffee beans, justifying the high price Mulvadi charges for what is actually less expensive commodity coffee.  Below are representative images of Mulvadi's deceptive "Kona" coffee products, including an image of the "seal."

 

**Figure MUL-1**                    **Figure MUL-2**

65. The Mulvadi package is <u>unequivocal</u> as to its contents; it says "100% Kona Coffee" twice on its front face.  Seeing that packaging on a shelf or online, a consumer would conclude that the package contains only Kona coffee beans.  But the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  These packages are clearly not Kona.  In other words, Mulvadi's labels identifying Kona as the origin of the coffee are false.

**COMPLAINT - 28**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure MUL-A**

66. The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Mulvadi's labels identifying Kona as the origin of the coffee are false.

**COMPLAINT - 29**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure MUL-B**

67.    *HAWAIIAN ISLES KONA COFFEE LTD., LLC.* Hawaiian Isles falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Hawaiian Isles advertises its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook.  With its marketing campaigns, Hawaiian Isles uses deceptive taglines and slogans such as "Taste the Kona Difference," "Bring Hawaii Home," "Give the Gift of Aloha," "Drink Kona Coffee and Relax," and "I Want My Toes in the Sand and Kona Coffee in My Hand," among others.  The deceptive slogans are designed to mislead consumers into believing that Hawaiian Isles coffee products primarily contain coffee from Hawaii, and more specifically the Kona District of Hawaii.  In addition, Hawaiian Isles uses deceptive names for its products intended to mislead consumers into believing that the coffee products contain a significant amount of Kona coffee.  The deceptive product names include "Kona Classic," "Kona Sunrise," "Kona Hazelnut," and "Kona Vanilla Macadamia Nut."  Hawaiian Isles also designs

COMPLAINT - 30
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

its product packaging with imagery, text, and advertising slogans intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona District. The deceptive marketing slogans, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Hawaiian Isles coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Hawaiian Isles charges for less expensive commodity coffee.

68. Below are several examples of the deceptive "Kona" products sold by Hawaiian Isles.

 

**Figure HI-1**                    **Figure HI-2**

The packages themselves state "Made in Hawaii" on a banner on the front, above a map of Hawaii and a photograph of palm trees at sunset. The marketing copy on the side of the package states that the contents were "freshly roasted and packaged in Hawaii." The package also states that "Kona Coffee is grown on the Big Island's Kona Coast." Given Hawaiian Isles' unequivocal designation of

**COMPLAINT - 31**
#1231382 v1 / 72448-002

**KARR TUTTLE CAMPBELL**
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

"Kona" as the origin of the coffee in its products, consumers buying these products would reasonably believe that Kona, and only Kona, was the origin of the coffee contained therein.

69. But while consumers would reasonably believe that the packages in Figures HI-1 and HI-2 contain coffee that originates exclusively from Kona, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, the science indicates that the coffee contained in the Hawaiian Isles packages is highly unlikely to originate from Kona.



**Figure HI-A**

70. The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. Again, the science indicates that the coffee contained in the

1  Hawaiian Isles packages is highly unlikely to originate from Kona.  In other words, Hawaiian Isles'

2  labels identifying Kona as the origin of the coffee are false.



**Figure HI-B**

71.    In fact, these bags appear to contain very little Kona coffee, if any.  As a simple

indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese

as nickel.  In contrast, some Hawaiian Isles samples have one hundred twenty times (120x) as much

manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the

conclusion that there must be very little Kona in this package.  In other words, Hawaiian Isles' labels

identifying Kona as the origin of the coffee are false.

72.    Even a consumer understanding this package to be a blend of Kona and other coffees

(which is a conclusion that very few consumers would draw based on this particular packaging) would

expect the package to contain a meaningful percentage of Kona beans.  In addition, consumers would

**COMPLAINT - 33**
#1231382 v1 / 72448-002

1   expect that a Kona blend would contain at least enough Kona coffee that a consumer would be able to

2   taste its presence.  Given the deviation in the concentration ratios, though, it is implausible that this

3   package meets those consumer expectations.

4

5       73.     GOLD COFFEE ROASTERS, INC.  Hawaiian Gold falsely designates the geographic

6   origin of its "Kona" coffee products with the prominent placement of KONA on the front of the

7   packaging.  Hawaiian Gold boasts on its packaging and on its website, www.goldcoffee.com, that the

8   "Kona" coffee contained in its coffee products is cultivated on a 900-acre plantation in the Kona

9   District, which Hawaiian Gold commonly refers to as the Parry Estates.  With its marketing, Hawaiian

10  Gold uses deceptive taglines and slogans such as "Grown in paradise. Enjoyed worldwide," "The

11  Hawaiian Difference," "From our land to your hand" (superimposed over a photograph of a tropical

12  island), and "Striking flavor. Exotic character" (superimposed over an image of lava flow).  The

13  deceptive slogans and imagery are designed to mislead consumers into believing that Hawaiian Gold

14  coffee products contain coffee from Hawaii, and more specifically the Kona District of Hawaii.  The

15  deceptive product packaging prominently features the word "Kona" in large font and includes pictures

16  of volcanic mountains, Bird of Paradise flowers, and other imagery indicative of Hawaii.  The

17  deceptive marketing, product names, and package designs are all intended to trade off the reputation

18  and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Hawaiian

19  Gold coffee products contain significant amounts of premium Kona coffee beans in order to justify

20

21  the high price Hawaiian Gold charges for what is actually less expensive commodity coffee.

22      74.     Below are representative images of Hawaiian Gold's deceptive "Kona" coffee

23  products.

**COMPLAINT - 34**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12

 

13            **Figure HG-1**                    **Figure HG-2**

14        75.    But while consumers would reasonably believe that the coffee in package HG-1

15  predominantly consisted of Kona beans, and the coffee in HG-2 contained nothing but 100% Kona,

16  the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the

17  barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range

18  of authentic Kona.  In other words, Hawaiian Gold's labels identifying Kona as the origin of the coffee

19  are false.

20
21
22
23
24
25
26
27

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure HG-A**

14   76.   The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel

15   ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well

16   outside the range of authentic Kona.  In other words, Hawaiian Gold's labels identifying Kona as the

17

18   origin of the coffee are false.

19
20
21
22
23
24
25
26
27

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure HG-B**

77.     In fact, the tested Hawaiian Gold products contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese as nickel.  In contrast, tests show that one of the Hawaiian Gold samples has roughly one hundred forty times (140x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

78.     Even a consumer understanding the coffee in the package shown in HG-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, these consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

COMPLAINT - 37
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

79.    *COST PLUS/WORLD MARKET*.  World Market sells both its own private-label coffee products and coffee products offered by third parties, including coffee products falsely identified as Kona coffee.  World Market falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  For example, World Market sells its own private-label coffee product labeled "Hawaiian Kona Blend" in packaging intended to mislead the consumer into believing the that the product contains a significant amount of Kona coffee beans, when the product actually contains little to no Kona coffee.  The deceptive packaging features hibiscus flowers and the prominent placement of geographic terms "Hawaiian" and "Kona" in the center of the package label. The deceptive product names and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that World Market coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price World Market charges for what is actually less expensive commodity coffee.

80.    Below is a sample image of the deceptive packaging used by World Market for its private-label "Kona" coffee product.

**COMPLAINT - 38**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure WM-1**

14

15    81.    In addition, World Market sells a variety of deceptive coffee products from Hawaiian

16    Isles, such as those shown above in paragraph 68 all of which mislead the consumer into believing

17    that the products contain a significant amount of Kona coffee beans when they actually contain little

18    or no Kona.

19    82.    While consumers would reasonably believe that the coffee in package WM-1

20    predominantly consisted of Kona beans, the lab tests tell a different story. On the below scatter plot

21    showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by

22    red diamonds) are well outside the range of authentic Kona. In other words, World Market's labels

23    identifying Kona as the origin of the coffee are false.

24

25

26

27

**COMPLAINT - 39**
#1231382 v1 / 72448-002





**Figure WM-A**

83.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, World Market's labels identifying Kona as the origin of the coffee are false.

**COMPLAINT - 40**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure WM-B**

91.    In fact, these bags contain very little Kona coffee, if any.  As an indicator of how little Kona coffee is actually in the package, note that authentic Kona has an average of no more than forty times (40x) as much manganese as nickel.  In contrast, World Market samples range as high as one hundred forty times (140x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

92.    Even a consumer understanding the coffee in the package shown in WM-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

**COMPLAINT - 41**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    84.    *BOYER'S*.  Boyer's falsely designates the geographic origin of its "Kona" coffee

2  products with the prominent placement of KONA on the front of the packaging.  For example, Boyer's

3  sells at least two different "Kona" coffee products.  One is labeled "Café Kona" and the other is labeled

4  "Kona Blend."  The Boyer's packaging is intended to mislead the consumer into believing that the

5  product contains a significant amount of Kona coffee beans, when the product actually contains little

6  to no Kona coffee.  The deceptive product names are intended to trade off the reputation and goodwill

7  of the Kona name.  They deliberately mislead the consumer into believing that Boyer's coffee products

8  contain significant amounts of premium Kona coffee beans in order to justify the high price Boyer's

9  charges for what is actually less expensive commodity coffee.  By using the term "Kona" to describe

10  its products, Boyer's is falsely designating the geographic origin of the product, creating confusion

11  around the geographic origin, and damaging the geographic designation itself.

12    85.    Below are representative images of Boyer's deceptive "Kona" coffee products.

**COMPLAINT - 42**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



**Figure BC-1**



**Figure BC-2[2]**

86.    While the packages say Kona, the lab tests tell a different story.  On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Boyer's labels identifying Kona as the origin of the coffee are false.

---

[2] Boyer's uses several variations of its packaging, but the differences are immaterial.  Plaintiffs have archive photographs of each package actually tested.

**KARR TUTTLE CAMPBELL**
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure BC-A**

87.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Boyer's labels identifying Kona as the origin of the coffee are false.

**COMPLAINT - 44**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure BC-B**

88.    In fact, these bags contain very little Kona coffee, if any.  As an indicator of how little Kona coffee is actually in the package, note that authentic Kona has an average of no more than forty times (40x) as much manganese as nickel.  In contrast, Boyer's samples range as high as one hundred ten times (110x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

89.    Even a consumer understanding the coffee in the packages shown in BC-1 and BC-2 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, such consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the

COMPLAINT - 45
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

90.    *Java LLC (Magnum Exotics).*  Java falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  With its marketing and packaging, Java uses deceptive taglines and slogans such as "Certified," "Kona High Mountain Coffee" and "100% High MT. Arabica Coffee."  On its online store, Java describes its "Kona" coffee product as "Grown high in the mountains of Hawaii, this blended coffee has the perfect balance of light taste, full body and moderate acidity."  The deceptive marketing is designed to mislead consumers into believing that Java's Magnum Exotics "Kona" products contain coffee from the Kona District, when the coffee products actually do not contain a significant amount of Kona coffee, if any.  Java also designs its Magnum Exotics product packaging with imagery and text intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona region.  The deceptive imagery utilized by Java includes illustrations of beaches, humming birds, hibiscus flowers, toucan birds, and tropical islands.  The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Java's Magnum Exotics coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Java charges for what is actually less expensive commodity coffee.

91.    Below is a representative image of Java's deceptive "Kona" coffee products.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure ME-1**

14
15    92.    While consumers would reasonably believe that the coffee contained in the package
16    shown in Figure ME-1 originated from Kona, the lab tests tell a different story. On the below scatter
17    plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products
18    (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Java's labels
19    identifying Kona as the origin of the coffee are false.
20
21
22
23
24
25
26
27

**COMPLAINT - 47**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure ME-A**

93.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Java's labels identifying Kona as the origin of the coffee are false.



**Figure ME-B**

94.     In fact, these bags contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese as nickel.  In contrast, Magnum Exotics samples range as high as one hundred forty-five times (145x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in Java's Magnum Exotics coffee products.

95.     Even a consumer understanding the coffee in the package shown in ME-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

COMPLAINT - 49
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

96.    *COPPER MOON COFFEE.*  Copper Moon falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  In addition, Copper Moon uses deceptive names for its products intended to mislead consumers into believing that the coffee products contain a significant amount of Kona coffee. The deceptive product names include "Kona 100% Arabica Premium Blend," and "Kona Premium Blend."  On its website, Copper Moon identifies the sources of the beans used in their coffee products, which include Nicaragua, Rwanda, Peru, and Ethiopia.  Noticeably absent is any description for the source of the Kona coffee that they purportedly use in their Kona coffee products.  Copper Moon also designs its product packaging with imagery and text intended to mislead the consumer into believing that the product labeled "Kona" contains coffee beans predominantly, if not exclusively, grown in the Kona District.  For example, Copper Moon's "Kona" products prominently feature a postage stamp of the iconic plumeria flower, used in Hawaiian lei, to mislead consumers into believing that the origin of the coffee product is Kona, Hawaii.  The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Copper Moon coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Copper Moon charges for less expensive commodity coffee beans.

97.    Below are representative images of Copper Moon's deceptive "Kona" coffee products.

**COMPLAINT - 50**
#1231382 v1 / 72448-002



**Figure CM-1**

98.     Copper Moon follows the term "Kona" with the percentage "100%," which alone reinforces the impression that the coffee is unadulterated Kona.  The misleading placement of "100%" near the term "Kona" is a deceptive practice employed by Copper Moon and other defendants to mislead consumers into believing that the product contains 100% Kona coffee.

99.     Copper Moon also labels its product as "100% Arabica," which is a deception that is common across many defendants.  Like over 75% of the world's coffee production, Kona is a kind of Arabica coffee bean.  The term "Kona" followed by the phrase "100% Arabica" is therefore consistent with the bag containing pure Kona coffee.  And it is not consistent with the bag containing non-Kona Arabica coffees.  Imagine, for example, that the package had said "Kona — 100% Coffee."  That marketing line would be just as true for real Kona, and just as meaningless, as the "100% Arabica" line.  And that language would never be interpreted as allowing the substitution of commodity coffee, since it "discloses" that it contains 100% coffee.  Similarly, labeling a product with the phrase

COMPLAINT - 51
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

"100% Arabica" does not allow a defendant to substitute cheaper Arabica beans for Kona beans, while misleading consumers to believe that the product contains 100% Kona coffee.

100.    But while consumers would reasonably believe that the package in Figures CM-1 contains 100% Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Copper Moon's labels identifying Kona as the origin of the coffee are false.



**Figure CM-A**

101.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Copper Moon's labels identifying Kona as the origin of the coffee are false.

COMPLAINT - 52
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure CM-B**

102.    In fact, these bags contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has an average of less than eight times (8x) as much barium as nickel.  In contrast, a Cooper Moon sample has over thirty times (30x) as much barium as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

103.    Even a consumer understanding the coffee in the package shown in CB-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

COMPLAINT - 53
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1      104.  *CAMERON'S.*  Cameron's falsely designates the geographic origin of its "Kona" coffee

2  products with the prominent placement of KONA on its packaging.  Cameron's also describes its

3  "Kona" coffee products as "premium," when the coffee beans in the product are not "premium" beans

4  from Kona but are instead merely commodity coffee beans from other regions of the world.  To further

5  deceive consumers as to the origin of the coffee beans in their "Kona" coffee products, Cameron's

6  packaging features a tropical flower to further the association between Hawaii and the Cameron's

7  product in the mind of the consumer.  Cameron's false designation of Kona as the origin of the coffee

8  is intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the

9  consumer into believing that Cameron's coffee products contain premium Kona coffee beans in order

10  to justify the high price Cameron's charges for less expensive commodity coffee beans.

11      105.  Below are representative images of the deceptive packaging used by Cameron's for its

12  "Kona" coffee products.




**Figure CC-1**            **Figure CC-2**

COMPLAINT - 54
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

106.    But while consumers could reasonably believe that the packages in Figures CC-1 and CC-2 contain nothing but Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Cameron's labels identifying Kona as the origin of the coffee are false.



**Figure CC-A**

107.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Cameron's labels identifying Kona as the origin of the coffee are false.

**COMPLAINT - 55**
#1231382 v1 / 72448-002



**Figure CC-B**

108.    Even a consumer understanding the coffee in the package shown in CC-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

109.    *THE KROGER CO.*  With its private-label "Kivu," Kroger falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the label of both its pre-packaged products and its self-serve dispensers.  In addition, Kroger sells coffee products from Hawaiian Gold, which also falsely designates Kona as the geographic origin.  Kroger designs its product packaging with imagery intended to mislead the consumer into believing that the

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

coffee product contains coffee beans grown in the Kona District. The deceptive packaging prominently features the word KONA with images of hibiscus flowers and tropical islands. The self-serve dispensary for the Kivu coffee describes the product as "premium coffee … grown on the steep slopes of the Kona region of Hawaii." These statements are intended to mislead consumers into believing that the Kona coffee sold under the Kivu label is cultivated in the Kona region, when in fact the product is mostly commodity coffee beans grown in other parts of the world. The deceptive package design featuring the false designation of Kona as the origin of the coffee is intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Kroger's coffee products contain nothing but premium Kona coffee beans in order to justify the high price Kroger charges for less expensive commodity coffee beans.

110.    Below is a sample image of the deceptive packaging used by Kroger for its private-label "Kona" coffee product at its self-serve dispensers found in its retail stores.



**Figure Kroger-1**

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    111.    But while consumers could reasonably believe that the package in Figure Kroger-1

2  contains nothing but Kona coffee, the lab tests tell a different story. On the below scatter plot showing

3  the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red

4  diamonds) are well outside the range of authentic Kona.  In other words, Kroger's labels identifying

5  Kona as the origin of the coffee are false.



**Figure Kroger-A**

112.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel

ratio reinforces the same conclusion.  These accused Kroger Kivu products (marked by red diamonds)

are well outside the range of authentic Kona.  In other words, Kroger's labels identifying Kona as the

origin of the coffee are false.

**COMPLAINT - 58**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure Kroger-B**

113.    In fact, these bags contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has less strontium than zinc.  (See Figure Kroger-A.)  In contrast, Kivu samples have between four times (4x) and six times (6x) as much strontium as zinc.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

114.    Even a consumer understanding the coffee in the package shown in Kroger-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, such consumers would expect that a Kona blend would contain at least enough Kona coffee to enable the consumer to taste the presence of this premium coffee bean.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

COMPLAINT - 59
#1231382 v1 / 72448-002

115. *WALMART.* Walmart sells a variety of deceptive coffee products, including but not limited to the following: MCC, Copper Moon, Cameron's, Hawaiian Gold, Boyer's, Hawaiian Isles, and Mulvadi. Walmart wrongfully profits on each sale.

116. *COSTCO.* Costco sells a variety of deceptive coffee products, including but not limited to Magnum Exotics. Costco wrongfully profits on each sale.

117. *BED BATH & BEYOND.* Bed Bath sells a variety of deceptive coffee products, including but not limited to Copper Moon. Bed Bath wrongfully profits on each sale.

118. *ALBERTSONS & SAFEWAY.* Albertsons and Safeway generally offer for sale the same coffee products featuring Kona on the label. They both sell a variety of deceptive coffee products, including but not limited to Hawaiian Isles. Safeway also sells deceptive coffee products from Cameron's. Albertsons and Safeway wrongfully profit on each sale.

119. *MNS LTD. ("ABC").* ABC sells a variety of deceptive coffee products, including but not limited to the following: Mulvadi, MCC and Hawaiian Isles. ABC wrongfully profits on each sale.

120. *MARMAXX.* Through its retail stores branded T.J. Maxx and Marshalls sells a variety of deceptive coffee products, including but not limited to the following: Hawaiian Gold, Magnum Exotics, and Kona Roasting Co. Marmaxx wrongfully profits on each sale.

121. *SPROUTS.* Sprouts sells a variety of deceptive coffee products, including but not limited to Cameron's. Sprouts wrongfully profits on each sale.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

2

3

### FIRST CLAIM FOR RELIEF

**Breach of Express Warranty**
**Uniform Commercial Code §§ 2-313, 2-714 & 2-607**

4      122.    Plaintiffs incorporate the above allegations by reference as though fully set forth below.

5

6

7      123.    Plaintiffs bring this claim under Article 2 of the Uniform Commercial Code (the "UCC") as individuals and on behalf of the proposed Class against <u>all Defendants</u>.

8      124.    Under the Section 2-313 of the UCC, express warranties by the seller of goods, including food products, are created under two scenarios relevant to this case. First, any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. Second, any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

9

10

11

12

13

14

15      125.    Here, the manufacturing Defendants have made affirmations of fact as to origin, quality and contents of their "Kona" products with the prominent placement of KONA on the label and with other statements made on the packaging or in their advertising of their "Kona" products. In addition, that same prominent placement of KONA or 100% KONA on the label, and other similar statements on the packaging of the accused products, create an express warranty that the coffee products conform to that description.

16

17

18

19

20

21

22      126.    As established through the scientific testing to date, the coffee contained in the accused products does not conform to such affirmations of fact and/or descriptions of the "Kona" coffee products at issue.

23

24

25

26      127.    Plaintiffs and member of the Class reasonably and justifiably relied on the forgoing

27

**COMPLAINT - 61**
#1231382 v1 / 72448-002

express warranties, believing that the accused coffee products purchased from Defendants conformed to these express warranties. Plaintiffs and members of the Class did not obtain the full value of the products as represented on the labels, packaging and marketing materials. If Plaintiffs and members of the Class had known of the true nature of the accused "Kona" coffee products, they would not have purchased the products, or they would not have been willing to pay the inflated price.

128.    As a result of Defendants' breaches of these express warranties, Plaintiffs and the Class have been harmed in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty
### Uniform Commercial Code §§ 2-314, 2-714 & 2-607

129.    Plaintiffs incorporate the above allegations by reference as though fully set forth below.

130.    Plaintiffs bring this claim under Article 2 of the Uniform Commercial Code (the "UCC") as individuals and on behalf of the proposed Class against all Defendants.

131.    Under Section 2-314 of the UCC, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. In this case, each of the Defendants qualifies as a merchant with respect to coffee products. Therefore, a warranty of merchantability is implied in every sale of coffee labeled as "Kona" to Plaintiffs and members of the Class.

132.    For a good, including food products such as the Kona coffee products at issue in this case, to be considered merchantable, the good must conform to the promise or affirmations of fact made on the container or label.

133.    By selling coffee clearly labeled KONA, Defendants have made an implied promise to Plaintiffs and members of the Class that the accused products are Kona coffee. But as established

**COMPLAINT - 62**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

through the scientific testing to date, the coffee contained in the accused products sold by Defendants does not conform to such affirmations of fact and/or promises made on the packages and label of the accused products. The accused "Kona" coffee products are not merchantable.

134. By selling coffee falsely labeled as "Kona," Defendants have breached the implied warranty of merchantability with each sale of the accused products to Plaintiffs and members of the class.

135. If Plaintiffs and members of the Class had known of the true nature of the accused "Kona" coffee products, they would not have purchased the products, or they would not have been willing to pay the inflated price.

136. As a result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs and the Class have been harmed in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**Common Law Fraud, Fraudulent Concealment, and Intentional Misrepresentations**

137. Plaintiffs incorporate the above allegations as if fully set forth below.

138. Plaintiffs bring this claim individually and on behalf of the proposed Class against only the Defendants who manufacture the accused coffee products falsely labeled as "Kona" coffee. Those Defendants include, but are not limited to, MCC, Hawaiian Isles, World Market, Boyer's, Java (Magnum Exotics), Mulvadi, Copper Moon, Hawaiian Gold, Cameron's, Kroger and certain yet to be identified John Doe Co.'s.

139. For years, these Defendants have willfully, falsely, and knowingly labeled, packaged and marketed their accused coffee products as authentic Kona coffee. During that period, these Defendants failed to inform Plaintiffs or members of the Class that the accused products were falsely

**COMPLAINT - 63**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

and misleading packaged and labeled as "Kona" coffee. But the scientific testing described above has now shown Defendants' intentional representations as to the contents of their products to be false.

140.    Until now, these intentional misrepresentations and omissions were known exclusively to these Defendants, were actively concealed by these Defendants, were not reasonably known to Plaintiffs or members of the Class, and were material at the time they were made. These Defendants certainly knew the composition of their coffee products and the falsity of labeling them "Kona." Given that these Defendants are sophisticated coffee manufacturers who know the difference between inexpensive commodity coffee and premium Kona coffee, which can only be purchased from farms located within the Kona District and for a wholesale cost that typically exceeds what these Defendants' products are sold for at retail, these Defendants' labeling, packaging and marketing of their products as "Kona" coffee is fraudulent. The conduct of these Defendants was willful and malicious, designed for no other purpose than to deceive consumers in order to maximize profits.

141.    Defendants' misrepresentations regarding their coffee falsely labeled "Kona" are material to a reasonable consumer because they relate to the characteristics of the product and the origin of the coffee beans contained in the accused coffee products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

142.    Plaintiffs and Class members reasonably and justifiably relied, to their detriment, on these Defendants' misrepresentations and omissions when purchasing the accused "Kona" coffee products. Had Plaintiffs and members of the Class been adequately informed, and not intentionally deceived by these Defendants, they would not have purchased Defendants' deceptive products falsely

**COMPLAINT - 64**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    labeled "Kona" coffee, especially at the inflated price charged by these Defendants.

2        143.    As a direct and proximate result of Defendants' fraud, intentional misrepresentations

3    and omissions, as well as the Defendants' concealment of the same, Plaintiffs and Class members have

4

5    suffered economic losses in an amount to be proven at trial.

6                              **FOURTH CLAIM FOR RELIEF**

7                    **Quasi-Contract/Unjust Enrichment/Restitution**

8        144.    Plaintiffs incorporate the above allegations as if fully set forth below.

9

10       145.    Plaintiffs bring this claim individually and on behalf of the proposed Class against all

11   Defendants.

12       146.    Defendants have sold products with labels and packaging that falsely and/or

13   misleadingly identify Kona as the source of the coffee beans contained in the package.  The false

14   information on the labels and the packaging of the accused "Kona" products induced Plaintiffs and

15   Class members to purchase the accused products made and/or sold by Defendants, and to do so at a

16

17   higher price.  Plaintiffs and Class members have reasonably relied on the misrepresentations on the

18   accused products and have received a substantially inferior product to that promised by the

19   Defendants.

20       147.    Plaintiffs and Class members have conferred a benefit upon the Defendants as

21   Defendants have retained monies paid to them by Plaintiffs and Class members.

22

23       148.    The benefits conferred were obtained at the expense of the Plaintiffs and Class

24   members.

25       149.    Under these circumstances, it is inequitable and unjust for the Defendants to retain the

26

27

**COMPLAINT - 65**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

profits from their deceptive acts at the expense of the Plaintiffs and members of the Class.

150.    Plaintiffs and members of the Class are entitled to restitution through the disgorgement of profits wrongfully obtained by Defendants from their sale of the accused "Kona" coffee products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants and other relief as follows:

1.    Enter judgment in favor of Plaintiffs and the Class on all claims asserted in this action;

2.    Award Plaintiffs and the Class all damages at an amount to be proven at trial;

3.    Restitution to Plaintiffs and the Class by disgorging all profits, and any other form of unjust enrichment, that each Defendant received from the manufacture and/or sale from the offending "Kona" coffee products;

4.    Award of prejudgment and post-judgment interest to the maximum extent permitted under the law;

5.    Any other remedy to which Plaintiffs and the Class may be entitled as provided by law or equity.

6.    For such other and further relief, including costs and attorneys' fees, as allowed by law and as the Court deems just and equitable.

//

//

//

//

//

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

DEMAND FOR JURY TRIAL

2

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

3

DATED this 1st day of March 2019.

4

5

6                                    KARR TUTTLE CAMPBELL
                                     *Attorneys for the Plaintiffs*
7

8                                    */s/ Paul Richard Brown*_____
9                                    Paul Richard Brown, WSBA #19357
                                     701 Fifth Avenue, Suite 3300
10                                   Seattle, Washington 98104
                                     Telephone: (206) 223-1313
11                                   Facsimile: (206) 682-7100
                                     Email: pbrown@karrtuttle.com
12

13

14                                    */s/ Nathan T. Paine*_____
                                     Nathan T. Paine, WSBA #34487
15                                   701 Fifth Avenue, Suite 3300
                                     Seattle, Washington 98104
16                                   Telephone: (206) 223-1313
                                     Facsimile: (206) 682-7100
17                                   Email:  npaine@karrtuttle.com
18

19

20

21

22

23

24

25

26

27

**COMPLAINT - 67**
#1231382 v1 / 72448-002

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100